UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORACE MANN WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MARISOL, et al.,<br><br>　　　　　Defendants. | Case No.  1:12-cv-00730 LJO DLB (PC)<br><br>FINDINGS AND RECOMMENDATION DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(B)(6)<br><br>[ECF No. 22] |

Plaintiff Horace Mann Williams ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.      Procedural History**

Plaintiff filed this action on May 4, 2012.  On May 13, 2013, the Court screened Plaintiff's First Amended Complaint ("FAC") and found cognizable claims against 1) Defendants Valdivia, Agu, Lopez, and Trimble for retaliation in violation of the First Amendment; and 2) Defendants Marisol, Sica, Agu, Valdivia, and Lopez for failure to protect Plaintiff from serious harm in violation of the Eighth Amendment. The Court dismissed all other claims and Defendants.

On October 9, 2013, Defendants Agu, Valdivia, Sica and Trimble filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that the FAC fails to state a claim upon

1

which relief may be granted, and under the unenumerated provisions of Fed. R. Civ. P. 12(b) on the grounds that Plaintiff failed to exhaust administrative remedies before he filed suit. On March 26, 2014, Defendant Lopez filed a motion to dismiss under the unenumerated provisions of Fed. R. Civ. P. 12(b) on the grounds that Plaintiff failed to exhaust his available administrative remedies before he filed suit.

On April 16, 2014, following the Ninth Circuit's decision in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), the Court issued an Order converting the exhaustion portion of Defendants' motions to dismiss to a motion for summary judgment. Still pending before the Court is the motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that the FAC fails to state a claim upon which relief may be granted by Defendants Agu, Valdivia, Sica, and Trimble. Plaintiff filed an opposition to the motion to dismiss on January 27, 2014, and Defendants Agu, Valdivia, Sica, and Trimble filed a reply on February 3, 2014. The motion is deemed submitted pursuant to Local Rule 230(l).

**II.    Summary of First Amended Complaint**

Plaintiff was incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, where the events giving rise to this action occurred. Plaintiff names as Defendants: associate warden Marisol; correctional counselor Garza[1]; correctional sergeant Sica; and correctional officers Valdivia, Lopez, Agu, and Trimble.

Plaintiff alleges the following. On December 9, 2009, Plaintiff was initially moved to Facility C, Building 6, Cell 114. FAC ¶¶ 1, 6. Plaintiff overheard Defendant Valdivia telling inmate Tamayo, Plaintiff's new cell mate, that Tamayo did not want Plaintiff in his cell as he was a homosexual and had a bad case. FAC ¶ 7. Inmate Tamayo later aggressively entered the cell and demanded to know why Plaintiff did not inform Tamayo that he is a homosexual. FAC ¶ 11. Plaintiff told Tamayo that he was not a homosexual. FAC ¶ 12. Inmate Tamayo showed Plaintiff several CDCR documents which indicated Tamayo's history of violence, especially against those who were homosexual. FAC ¶ 18. Between December 9 and December 15,

---

[1] Correctional counselor Garza was dismissed from the action on May 9, 2013.

Plaintiff was subject to threats of violence by inmate Tamayo. FAC ¶ 20. Several inmates also approached Plaintiff to solicit sexual acts and demand that drugs be brought into the institution via Plaintiff's wheelchair. FAC ¶ 21. On December 14, 2009, Plaintiff approached Defendant Agu to inform him of the threats. FAC ¶ 21. Defendant Agu warned Plaintiff that Defendants Valdivia and Lopez do not like blacks, whether inmates or officers. FAC ¶ 23.

On December 15, 2009, Plaintiff exited his cell with his property and approached Defendant Lopez, telling him that he could not remain in the cell and that he felt his life was in jeopardy. FAC ¶ 25. Inmate Tamayo was subsequently moved out of the cell. FAC ¶ 28. On December 20, 2009, Plaintiff completed an inmate appeal and submitted it to Defendant Agu. FAC ¶¶ 29-30. Defendant Agu accepted it and walked away, but then returned twenty minutes later, informing Plaintiff that the appeal box was missing. FAC ¶¶ 30-33. Plaintiff requested that Defendant Agu forward it to the appeals coordinator, but he refused, stating that he had to work with the racists. FAC ¶¶ 34-35.

On December 21, 2009, Plaintiff submitted the inmate appeal to Defendant Trimble for forwarding. FAC ¶ 37. Defendant Trimble also refused, stating that he did not want to get involved with Plaintiff's issue with Defendant Valdivia. FAC ¶¶ 38-39. Plaintiff during evening mail presented the inmate appeal to Defendant Agu, this time for processing as legal mail. FAC ¶ 41. Defendant Agu accepted the envelope, looked through it, passed it back to Plaintiff for him to seal, and the envelope passed back to Defendant Agu. FAC ¶ 42.

Plaintiff the next day approached Defendants Agu and Lopez, and asked Defendant Agu if the inmate appeal had been processed. FAC ¶¶ 45-46. Defendant Agu stated that it had not. FAC ¶ 48. Later, at Plaintiff's cell, Defendant Agu stated that it was not processed and told Plaintiff that Defendant Lopez took his appeal to Defendant Valdivia, who then tore it up. FAC ¶ 50.

Plaintiff rewrote his appeal, and on December 23, 2009, during a medical appointment, presented the appeal to Defendant Garza, the acting correctional counselor II, describing Plaintiff's problems with Defendant Valdivia and other inmates. FAC ¶¶ 51, 54, 55. Defendant Garza refused to process it and stated that he would instruct the floor officer of the housing unit

to accept it. FAC ¶¶ 57, 58. Defendant Trimble was the floor officer. FAC ¶ 60. When Plaintiff presented the appeal, Defendant Trimble stated that he did not realize Plaintiff was the one, and refused to accept the appeal. FAC ¶¶ 61. Plaintiff instead placed the 602 appeal into the ADA appeals box with Defendant Trimble witnessing. FAC ¶ 64.

On December 26, 2009, Plaintiff received a visit from his wife, and told her of his problems. FAC ¶¶ 67-68. Defendant Marisol entered the visiting room. FAC ¶ 70. Plaintiff and his wife approached Defendant Marisol to tell her about Plaintiff's safety concerns and his problems with the appeals process. FAC ¶¶ 72-73. Defendant Marisol stated that she would look into the matter and call Plaintiff's wife. FAC ¶ 75. On January 1, 2010, Plaintiff's wife informed Plaintiff that she had not received a phone call. FAC ¶ 76.

On January 7, 2010, Plaintiff went out to medical, and upon his return to Building 6, saw Defendant Sica at the tower entrance. FAC ¶ 82. Plaintiff informed Defendant Sica that he was having extreme difficulties submitting an appeal and that he was being threatened by inmates. FAC ¶¶ 82-83. Defendant Sica criticized Defendant Lopez directly for failing to run his unit properly, and noted to Plaintiff that his inmate appeal was still in the ADA appeals box. FAC ¶¶ 86, 87.

On January 15, 2010, following Plaintiff complaining separately to the Investigative Services Unit ("ISU"), Plaintiff was interviewed by Sergeant Sells of ISU. FAC ¶ 91. Plaintiff informed sergeant Sells of his problems created by Defendant Valdivia's false allegation. FAC ¶ 92. Sergeant Sells stated that as soon as Plaintiff's issue crossed her desk she would look into the matter. FAC ¶ 93. On January 19, 2010, as Plaintiff exited his cell, Defendant Valdivia stated that Plaintiff was a black snitch, and that Plaintiff was going to be "fixed." FAC ¶¶ 94, 95. On January 22, 2010, Defendant Lopez stated that Plaintiff had "fucked up" and declared Plaintiff to be nothing but a child molester who would get beat. FAC ¶ 97. Defendant Lopez had a newspaper article concerning Plaintiff's arrest and conviction. FAC ¶ 99.

On January 23, 2010, Defendant Lopez had Plaintiff moved from Facility C Building 6 to Building 7, with collusion between Defendants Sica and Valdivia. FAC ¶ 101. Plaintiff stated to Defendant Lopez that he had an enemy in Building 7, to which Defendant Lopez indicated that

he did not care. FAC ¶ 102. Plaintiff was forced to move to Building 7. FAC ¶ 104. On January 28, 2010, inmate Beck, an inmate in Building 7 who had previously threatened Plaintiff, assaulted Plaintiff, causing further spine injuries to Plaintiff as he was thrown out of his wheelchair. FAC ¶ 105.

On January 29, 2010, several inmates came to Plaintiff's cell and threatened Plaintiff with stabbing if he left his cell. FAC ¶ 114. Plaintiff observed several inmates looking at the article pertaining to his case, which was previously in Defendant Lopez's possession. FAC ¶ 115. On February 4, 2010, Plaintiff filed an appeal requesting removal from the yard for safety concerns. FAC ¶ 117. Plaintiff returned to the program office and met with Defendant Sica, informing Defendant Sica of the threats. FAC ¶ 119. Defendant Sica initially refused to move Plaintiff, merely informing building staff to put a cap on Plaintiff's cell. FAC ¶ 120. On several occasions, however, inmates would attempt to get into the cell to harm Plaintiff. Plaintiff was then escorted back to Defendant Sica, who asked for information on the threatening inmates. FAC ¶ 121. Plaintiff was then transferred to administrative segregation for safety reasons. FAC ¶ 123.

**III.     Fed. R. Civ. P. 12(B)(6)**

A.     Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).  Further, although the pleading standard is now higher, the Ninth Circuit has continued to emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their

pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

B. Prior Screening Order

On May 13, 2013, the Court issued an Order indicating that it had screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated numerous causes of action. The Court's conclusion was based upon the same legal standards as this Rule 12(b)(6) motion, and the screening order may not be ignored or disregarded. Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005).

To the contrary, the existence of a screening order which utilized the same legal standard upon which a subsequent motion to dismiss relies necessarily implicates the law of the case doctrine, and as a result, Defendant is expected, reasonably so, to articulate the grounds for his Rule 12(b)(6) motion in light of a screening order finding the complaint stated a claim. Ingle, 408 F.3d at 594; Thomas v. Hickman, No. CV F 06-0215 AWI SMS, 2008 WL 2233566, at *2-3 (E.D. Cal. May 28, 2008).

If the defendant, in a case which has been screened, believes there is a good faith basis for revisiting a prior determination made in a screening order, they must identify the basis for their motion, be it error, an intervening change in the law, or some other recognized exception to the law of the case doctrine. Ingle, 408 F.3d at 594 ("A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result."). The duty of good faith and candor requires as much, and frivolous motions which serve only to unnecessarily multiply the proceedings may subject the moving parties to sanctions. Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1119 (9th Cir. 2000). Parties are not entitled to a gratuitous second bite at the apple at the expense of judicial resources and in disregard of court orders. Ingle, 408 F.3d at 594 (The law of the case "doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a

single continuing lawsuit.") (internal quotation marks and citation omitted); Thomas, 2008 WL 2233566, at *3 (for important policy reasons, the law of the case doctrine disallows parties from a second bite at the apple).

Therefore, Rule 12(b)(6) motions which fail to acknowledge the prior procedural history and screening orders, and which fail to articulate the reasons for the motion in light of the prior relevant orders, implicate the law of the case doctrine, unnecessarily multiply the proceedings, and fall well below the level of practice which is expected in federal court.

With this standard in mind, the Court will now address Defendant's arguments.

C.   Analysis

   1.   Eighth Amendment

      a.   Legal Standard

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

      b.   Discussion

Plaintiff's complaint was screened and the Court determined that it stated an Eighth

Amendment failure to protect claim against Defendants Valdivia, Lopez, Agu, Marisol, and Sica. Defendants Valdivia, Agu, Marisol, and Sica contend that dismissal is warranted because Plaintiff did not suffer actual injury as a result of their actions. Defendants further contend that they did not act with deliberate indifference in violation of the Eighth Amendment because they did not know of facts from which an inference could be drawn that they knew of a serious harm to Plaintiff concerning an attack by inmate Beck. Finally, Defendants argue that there is no causal relationship between their actions and the resulting assault by inmate Beck.

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir.1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health . . . .'" Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

Here, there is evidence that Defendant Valdivia told inmate Tamayo that Plaintiff was a homosexual whereupon Plaintiff was subjected to threats of violence by Tamayo and other inmates. Defendants contend that Plaintiff's failure to protect claim fails because there is no evidence Plaintiff was actually assaulted by inmate Beck because of Defendants' actions. Where an inmate's claim is based on alleged failure to prevent harm, the inmate may satisfy the "sufficiently serious" requirement by showing the existence of "conditions posing a substantial risk of serious harm" to him. Farmer, 511 U.S. at 834; Helling, 509 U.S. at 33-34. Plaintiff need not establish actual injury to sufficiently state an Eighth Amendment claim for failure to protect. Farmer, 511 U.S. 825 (Plaintiff need not wait for a "tragic event" such as an actual assault before obtaining relief); see, e.g., Radillo v. Lunes, 2008 WL 4209824 (E.D. Cal. Sept. 8, 2008);

Martinez v. Lunes, 2007 WL 529831 (E.D. Cal. Feb. 20, 2007), report and recommendation adopted, 2007 WL 1411743 (E.D. Cal. May 11, 2007), order corrected, 2007 WL 3232197 (E.D. Cal. Oct. 31, 2007). The Eighth Amendment protects against future harm to inmates because inmates must be furnished with basic human needs, one of which is "reasonable safety." Helling, 509 U.S. at 33. In the case of failing to protect an inmate, a prisoner can show an Eighth Amendment violation by providing evidence that prison officials, with deliberate indifference, exposed him to a serious risk to his safety. Id. at 35.

In this action, as noted above, Plaintiff alleges Defendant Valdivia informed inmate Tamayo that Plaintiff was a homosexual and that he had a bad case. Thereafter, Plaintiff claims, he was subjected to threats of violence by Tamayo and other inmates, that he was approached by other inmates soliciting sexual acts and demanding he bring drugs into the prison via his wheelchair, and that other inmates had attempted to enter his cell to harm him. Taking the facts in the light most favorable to Plaintiff, Plaintiff has shown that he was exposed to a serious risk of being assaulted by Tamayo and other inmates based on Defendant Valdivia's alleged statement to Tamayo that Plaintiff was a homosexual. Therefore, the Court stands by its screening order in finding that Plaintiff has sufficiently stated a claim that Defendant Valdivia acted with deliberate indifference in exposing him to a serious risk to his safety. Helling, 509 U.S. at 35.

With respect to Defendants Agu and Sica, Plaintiff alleges he informed Defendants of his safety concerns as a result of Defendant Valdivia's actions but Defendants ignored his concerns. The Court stands by its screening order in finding that Plaintiff sufficiently stated a claim that Defendants Agu and Sica failed to act to prevent serious harm.

        2.    First Amendment

        a.    Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

b. Discussion

Defendants Agu and Trimble contend Plaintiff failed to state a claim of retaliation against them. Defendants Agu and Trimble present no arguments which persuade the Court it committed clear error in determining that Plaintiff's First Amendment claim was cognizable, or that any other grounds justifying relief from the screening order exist.

Defendants' argument is based on their contention that they did not hinder Plaintiff's attempts to submit his appeal in retaliation for Plaintiff having prepared the appeal. Defendants contend that they actually attempted to assist Plaintiff in processing his appeal. However, taking the facts in the light most favorable to Plaintiff, Plaintiff has shown that Defendant Agu was aware of Plaintiff's complaints and appeal concerning Defendant Valdivia. He has further shown that Agu refused to accept the appeal on one occasion, and on another occasion he gave the appeal to Lopez rather than deposit it in the legal mail. Plaintiff states Agu refused to forward his appeal because he had "to work with these damn racist (sic)." Defendant Agu therefore refused to submit the appeal because of Plaintiff's issues with Valdivia. Thus, the Court stands by its screening order in finding that Plaintiff has sufficiently stated a claim against Defendant Agu for retaliation.

Plaintiff has also shown that Defendant Trimble refused to accept his appeal because of Plaintiff's issues with Valdivia. Plaintiff contends that Trimble refused the appeal stating he didn't want to get involved in Plaintiff's issues with Valdivia. Therefore, the Court finds that Plaintiff sufficiently states a claim of retaliation against Trimble.

///

**IV.     Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendants Agu, Valdivia, Sica and Trimble's motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that the FAC fails to state a claim be DENIED; and

2.     Defendants Agu, Valdivia, Sica and Trimble file a responsive pleading within thirty (30) days of the date of service of the order adopting these Findings and Recommendations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one (21) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 10, 2014**            /s/ Dennis L. Beck
                                           UNITED STATES MAGISTRATE JUDGE

11