# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORACE MANN WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CATES, et al.,<br><br>　　　　Defendants. | Case No. 1:12-cv-00730-LJO-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. 106)**<br><br>**TWENTY-ONE DAY DEADLINE** |

## INTRODUCTION

Plaintiff, Horace Mann Williams, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action on May 4, 2012. 42 U.S.C. § 1983.

On May 13, 2013, the Court screened Plaintiff's First Amended Complaint ("FAC") and found cognizable claims against 1) Defendants Valdivia, Agu, Lopez, and Trimble for retaliation in violation of the First Amendment; and 2) Defendants Marisol1, Sica, Agu, Valdivia, and Lopez for failure to protect Plaintiff from serious harm in violation of the Eighth Amendment. The Court dismissed all other claims and Defendants.

On October 9, 2013, Defendants Agu, Valdivia, Sica, and Trimble filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), contending that the FAC failed to state a claim upon which relief may be granted, and under the unenumerated provisions of Fed. R. Civ. P. 12(b) for Plaintiff's failure to exhaust administrative remedies before filing suit. On March 26, 2014, Defendant Lopez also filed a motion to dismiss under the unenumerated provisions of Fed. R. Civ. P. 12(b) for Plaintiff's failure to exhaust available administrative remedies before filing suit.

1

On April 16, 2014, in accordance the Ninth Circuit's decision in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), the Court issued an order converting the exhaustion portion of Defendants' motions to dismiss to motions for summary judgment pursuant to Fed. R. Civ. P. 56. On October 31, 2014, the Court denied Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b). On April 8, 2015, the Court granted Defendants' motions for summary judgment on exhaustion and dismissed the action. Plaintiff filed an appeal.

The Ninth Circuit reversed and remanded for further proceedings regarding whether prison officials obstructed Plaintiff's attempts to submit a grievance regarding Defendant Valdivia's statements in December of 2009 and to consider Plaintiff's evidence that he also submitted an emergency grievance in early February 2010, describing a retaliatory move to a cell block where a known enemy resided, an attack by another inmate, and threats to Plaintiff's safety.

On September 7, 2017, Defendants filed a motion for summary judgment on the exhaustion issues that were remanded by the Ninth Circuit. After receiving several extensions of time, Plaintiff filed an opposition and Defendants filed a reply. The motion is deemed submitted. L.R. 230 (*l*). For the reasons discussed below, the Court finds that Defendants' motion should be DENIED.

## **FINDINGS**

**A. Legal Standards**

    **1. Summary Judgment Standard**

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[1] *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their

---

[1] The Federal Rules of Civil Procedure will hereinafter be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

2

burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Plaintiff's filings must be liberally construed because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted). All inferences must be drawn in the light most favorable to Plaintiff as the nonmoving party. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

A defendant is only entitled summary judgment if the undisputed evidence viewed in the light most favorable to the prisoner shows that administrative remedies were available to Plaintiff which he failed to exhaust. *Williams*, at 1166. The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

## 2. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes v. Smith,* 810 F.3d 654, 567 (9th Cir. 2016). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002), regardless of the relief both sought by the prisoner and offered by the process,

3

*Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the "availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001).

### 3. Summary of CDCR's Inmate Appeals Process in 2009

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare. Cal. Code Regs., tit. 15, § 3084.1. Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010). Although the Title 15 regulations governing CDCR's inmate appeals process were amended in 2011, Plaintiff's claims arise from events which allegedly occurred in 2009 and the relevant regulations are those in effect at that time. Therefore, the citations to Title 15 are to the pre-amendment regulations in effect before December 13, 2010.

During the relevant time, the inmate appeals process was initiated by submitting a CDC Form 602 describing "the problem and action requested." Cal. Code Regs., tit. 15, § 3084.2(a) (West 2009). An appeal had to be submitted "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Tit. 15, § 3084.6(c). Up to four levels of appeal could be involved, which included: an informal level; first formal level; second formal level; and third formal level—also known as the Director's Level. Tit. 15, § 3084.5.

The Ninth Circuit adopted the *Strong* standard as "the standard of factual specificity required when a prison's grievance procedures do not specify the requisite level of detail." *Griffin*, 557 F.3d at 1120 (adopting standard articulated in *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). That standard applies to California's state prison 2009 regulations which

4

provide that an appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824 (citing *Griffin*, 557 F.3d at 1120) (internal quotation marks omitted). As a result, the exhaustion inquiry is fact specific and requires consideration of the inmate's appeal and the responses thereto. *Harvey*, 605 F.3d at 685; *Brown*, 422 F.3d at 935.

**B.     Defendants' Motion on Exhaustion per 42 U.S.C. § 1997e(a)[2]**

Based on the Ninth Circuit's remand decision in this action, Defendants move for summary judgment on exhaustion grounds as to Plaintiff's alleged December 2009 and emergency appeals. Defendants contend that the allegations in these appeals were not sufficient to put prison officials on notice of Plaintiff's First and Eighth Amendment claims against Defendant Agu and his First Amendment claim against Defendants Trimble, Valdivia, and Lopez.[3] Defendants contend that even assuming Plaintiff did not have an available administrative remedy with respect to the allegations in those appeals, Defendants are still entitled to summary judgment because Plaintiff's allegations were deficient.

**C.     Plaintiff's Allegations**

Plaintiff alleges that on December 9, 2009, while housed at Kern Valley State Prison, he was moved to Facility C, Building 6, Cell 114. (Doc. 9, FAC ¶¶ 1, 6.) Plaintiff overheard Defendant Valdivia telling inmate Tamayo, Plaintiff's new cell mate, that Tamayo did not want Plaintiff in his cell as Plaintiff was a homosexual and "had a bad case." (*Id.*, ¶ 7.) Inmate Tamayo later aggressively entered the cell and demanded to know why Plaintiff did not inform Tamayo that he is homosexual. (*Id.*, ¶ 11.) Plaintiff told Tamayo he is not homosexual. (*Id.*, ¶ 12.) Inmate Tamayo showed Plaintiff several CDCR documents reflecting Tamayo's history of violence—especially against homosexuals. (*Id.*, ¶ 18.) Between December 9 and December 15, 2009, Plaintiff was subjected to threats of violence by inmate Tamayo. (*Id.*, ¶ 20.) Several inmates also approached Plaintiff to solicit sexual acts and to demand that drugs be brought into

---
[2] All references to pagination of specific documents pertain to those indicated on the upper-right corners via the CM/ECF electronic court docketing system.
[3] Defendants do not seek summary judgment on Plaintiff's Eighth Amendment claim against Defendants Valdivia, Lopez, and Sica. (*See* Doc. 106-1, p. 2, n. 1.)

5

the institution via Plaintiff's wheelchair. (*Id.*, ¶ 21.) On December 14, 2009, Plaintiff informed Defendant Agu of the threats. (*Id.*, ¶ 21.) Defendant Agu simply responded by warning Plaintiff that Defendants Valdivia and Lopez do not like blacks—whether inmates or officers. (*Id.*, ¶ 23.)

On December 15, 2009, Plaintiff exited his cell with his property and told Defendant Lopez that Plaintiff could not remain in the cell because his life was in jeopardy. (Doc. 9, FAC ¶ 25.) Inmate Tamayo was moved out of Plaintiff's cell. (*Id.*, ¶ 28.) On December 20, 2009, Plaintiff completed an inmate appeal and submitted it to Defendant Agu. (*Id.*, ¶¶ 29-30.) Defendant Agu accepted it and walked away, but returned twenty minutes later, informing Plaintiff that the appeal box was missing. (*Id.*, ¶¶ 30-33.) Plaintiff requested that Defendant Agu forward it to the appeals coordinator, but Defendant Agu refused, stating he had to work with "the racists." (*Id.*, ¶¶ 34-35.)

On December 21, 2009, Plaintiff submitted the inmate appeal to Defendant Trimble to forward to the appeals coordinator. (Doc. 9, FAC, ¶ 37.) Defendant Trimble also refused, stating that he did not want to get involved in Plaintiff's issue with Defendant Valdivia. (*Id.*, ¶¶ 38-39.) During evening mail, Plaintiff presented his inmate appeal to Defendant Agu for processing as legal mail. (*Id.*, ¶ 41.) Defendant Agu accepted the envelope, looked through it, passed it back for Plaintiff to seal; Plaintiff then gave the envelope back to Defendant Agu for mailing. (*Id.*, ¶ 42.)

The next day, Plaintiff approached Defendants Agu and Lopez, and asked Defendant Agu if the inmate appeal had been processed. (Doc. 9, FAC, ¶¶ 45-46.) Defendant Agu responded in the negative. (*Id.*, ¶ 48.) Later, at Plaintiff's cell, Defendant Agu stated that the inmate appeal was not processed and told Plaintiff that Defendant Lopez took it to Defendant Valdivia, who tore it up. (*Id.*, ¶ 50.)

Plaintiff rewrote his appeal, describing his problems with Defendant Valdivia and other inmates, and on December 23, 2009, during a medical appointment, presented it to Garza, the acting correctional counselor II. (Doc. 9, FAC, ¶¶ 51, 54, 55.) Garza, who is no longer a defendant, refused to process it and stated he would instruct the floor officer of the housing unit to accept it. (*Id.*, ¶¶ 57, 58.) Defendant Trimble was the floor officer. (*Id.*, ¶ 60.) When

6

Plaintiff presented the appeal, Defendant Trimble stated that he did not realize Plaintiff was the one, and refused to accept the appeal. (*Id.*, ¶ 61.) Plaintiff instead placed the 602 appeal into the ADA appeals box while Defendant Trimble watched. (*Id.*, ¶ 64.)

On December 26, 2009, Plaintiff received a visit from his wife and told her of his problems. (Doc. 9, FAC, ¶¶ 67-68.) Prison staff Marisol, who is no longer a defendant, entered the visiting room. (*Id.*, ¶ 70.) Plaintiff and his wife approached Marisol and told her about Plaintiff's safety concerns and problems with filing a corresponding inmate appeal. (*Id.*, ¶¶ 72-73.) Marisol stated she would look into the matter and call Plaintiff's wife. (*Id.*, ¶ 75.) On January 1, 2010, Plaintiff's wife informed him that she had not received a phone call. (*Id.*, ¶ 76.)

On January 7, 2010, Plaintiff went out to medical, and upon his return to Building 6, saw Defendant Sica at the tower entrance. (Doc. 9, FAC, ¶ 82.) Plaintiff informed Defendant Sica that he was having significant difficulties submitting an appeal and was being threatened by inmates. (*Id.*, ¶¶ 82-83.) Defendant Sica criticized Defendant Lopez directly for failing to run his unit properly, and noted to Plaintiff that his inmate appeal was still in the ADA appeals box. (*Id.*, ¶¶ 86, 87.)

On January 15, 2010, following Plaintiff's complaint to the Investigative Services Unit ("ISU"), Plaintiff was interviewed by Sergeant Sells (not a defendant) of ISU. (Doc. 9, FAC, ¶ 91.) Plaintiff informed Sergeant Sells of his problems created by Defendant Valdivia's false allegation. (*Id.*, ¶ 92.) Sergeant Sells stated that as soon as Plaintiff's issue crossed her desk she would look into the matter. (*Id.*, ¶ 93.) On January 19, 2010, as Plaintiff exited his cell, Defendant Valdivia stated that Plaintiff was a black snitch, and that Plaintiff was going to be "fixed." (*Id.*, ¶¶ 94, 95.) On January 22, 2010, Defendant Lopez stated that Plaintiff had "fucked up" and declared Plaintiff to be nothing but a child molester who would get beat. (*Id.*, ¶ 97.) Plaintiff noticed Defendant Lopez holding a newspaper article concerning Plaintiff's arrest and conviction. (*Id.*, ¶ 99.)

On January 23, 2010, Defendants Lopez, Sica, and Valdivia Plaintiff moved from Facility C Building 6 to Building 7. (*Id.*, ¶ 101.) When Plaintiff told Defendant Lopez he had an enemy in Building 7, Defendant Lopez indicated he did not care. (*Id.*, ¶ 102.) Plaintiff was forced to

7

move to Building 7.  (*Id.*, ¶ 104.)  On January 28, 2010, inmate Beck in Building 7, who had previously threatened Plaintiff, assaulted Plaintiff by throwing him out of his wheelchair, causing him further spine injuries.  (*Id.*, ¶ 105.)

On January 29, 2010, several inmates came to Plaintiff's cell and threatened to stab Plaintiff if he left his cell.  (*Id.*, ¶ 114.)  Plaintiff observed several inmates looking at the same article regarding his case as the one possessed by Defendant Lopez.  (*Id.*, ¶ 115.)  On February 4, 2010, Plaintiff filed an appeal requesting removal from the yard for safety reasons.  (*Id.*, ¶ 117.)  Plaintiff returned to the program office, met with Defendant Sica, and informed Defendant Sica of the threats.  (*Id.*, ¶ 119.)  Defendant Sica initially refused to move Plaintiff and simply directed building staff to "put a cap" on Plaintiff's cell.  (*Id.*, ¶ 120.)  On several occasions, however, inmates attempted to get into the cell to harm Plaintiff.  Plaintiff was subsequently escorted back to Defendant Sica, who asked for information on the threatening inmates.  (*Id.*, ¶ 121.)  Plaintiff was thereafter transferred to administrative segregation for safety reasons.  (*Id.*, ¶ 123.)

**D.     The Evidence**

**1.     The December 20, 2009 Inmate Appeal**

Plaintiff alleges that in December 2009, he authored an inmate appeal regarding Defendant Valdivia.  (SUF No. 1.)  A copy of that appeal is attached as Exhibit A to the Complaint.  (SUF No. 2.)  In the appeal, Plaintiff stated that, on December 9, 2009, Valdivia made "defamatory and sexually threatening statements" which "created a hostile and precarious situation" for Plaintiff.  (Doc. 115, Ex. A, p. 32.)  Plaintiff further stated that Valdivia's statements caused Plaintiff to be "subjected to harassment," and that upon entering his cell in Building 6, Plaintiff "was immediately confronted by his cellie" regarding Plaintiff's sexual preference.  (*Id.*, p. 33.)  Plaintiff stated that his cellie was moved to a different cell on December 15, 2009.  (*Id.*)  Plaintiff further stated that he feared reprisal from Valdivia and other officers or inmates because of Valdivia's "negative reputation" against African Americans.  (*Id.*)  Plaintiff concluded the appeal by stating he feared being falsely written up, harassed, or assaulted for filing this appeal, and that Plaintiff's precarious situation had been reported to the third watch sergeant as well as to Building 6 correctional officers.  (*Id.*)

Although Plaintiff repeatedly requested that various prison staff submit this appeal to the appeals coordinator, it was not submitted until January 3, 2010, when Plaintiff was able to send it out as legal mail to the chief of inmate appeals. (Doc. 115, p. 15.) On March 11, 2010, it was rejected as duplicative of KVSP-0-10-00468 which was already being processed. (*Id.*) Since Plaintiff's December 2009 appeal was rejected as duplicative of KVSP-0-10-0046, the latter must also be considered.

### 2.  Inmate Appeal KVSP-0-10-00468[4]

In this appeal, Plaintiff stated that he gave a "staff complaint" against Valdivia to Agu for placement "in CDC 602 box in Bldg 6 on 12/20/2009." (Doc. 115, p. 40.) Plaintiff stated that Agu brought it back because the box was missing. (*Id.*) Plaintiff then attempted to submit the appeal by giving it to Agu as legal mail, but the next day, Agu and Lopez said there was no "page number of processed legal mail the previous day for [Plaintiff]." (*Id.*) Shortly thereafter, Agu told Plaintiff that Lopez took the appeal and it was gone. (*Id.*) Plaintiff rewrote the appeal and spoke with CCI Garza who told him to return to his housing unit and give it to Trimble; however, Trimble refused to accept it when Plaintiff explained it was a staff complaint against Valdivia for telling his cellie that Plaintiff was a homosexual and making other false comments. (*Id.*, p. 42.) Trimble watched as Plaintiff placed it in the "ADA 1824 Appeal Box." (*Id.*) Plaintiff noted that when his wife was visiting, they told other prison personnel of the difficulty Plaintiff was having filing this appeal, where he placed it, and that he feared backlash for filing it. (*Id.*) Plaintiff stated he also alerted a sergeant who told him "it would cross her desk and then she would deal with it." (*Id.*) Plaintiff further stated he told Sica about the missing 602 box and of his complaint against Valdivia that was still in the ADA box before Sica went into the office with Lopez. (*Id.*) Plaintiff concluded this appeal by stating that his staff complaint against Valdivia "is again missing." (*Id.*)

The Second Level Review and Director's Level Appeal Decision on this appeal noted that the issue raised by Plaintiff in this appeal was that Valdivia, Lopez, and Agu intentionally

---

[4] Though this appeal was considered in the rulings which granted Defendants' prior motion for summary judgment, (*see* Docs. 86, 91), there have been intervening changes in law to warrant its consideration anew.

withheld Plaintiff's inmate appeal containing a staff complaint from being processed, and that Valdivia told Plaintiff's cellmate that Plaintiff was homosexual. (Doc. 115, pp. 38, 43.)

### 3. Analysis

As reflected in Plaintiff's inmate appeals at issue in this action, in 2009, inmate appeal forms simply directed an inmate to provide information to "Describe Problem" and "Action Requested." (*See i.e.* Doc. 115, pp. 32, 40.) "[I]f prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" *Johnson v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004), quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). In 2009, the Ninth Circuit specifically held that *Strong* set the appropriate standards for prisoner grievances to sufficiently notify prison personnel of a problem for exhaustion purposes. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

Under these standards, Plaintiff's statements in his December 20, 2009 inmate appeal and KVSP-0-10-00468 generally alerted prison staff that Valdivia had made statements to Plaintiff's cellie which threatened Plaintiff's safety. They also alerted prison staff that other officers refused to accept and/or process Plaintiff's inmate appeal—at least, in part, because it was against Valdivia—in which Plaintiff raised potential claims under the Eighth Amendment for Valdivia's actions which jeopardized his safety and for the other Defendants' failure to act to take steps to protect him. Since the failure of the Defendants to take steps to protect Plaintiff occurred in the context of failing to submit and process his inmate appeal which Defendants knew was against Valdivia, these appeals sufficed to alert prison officials that Plaintiff may also raise a retaliation claim under the First Amendment. In 2009, this met "[t]he primary purpose of a grievance[,] to alert the prison to a problem and facilitate its resolution, . . . ." *Griffin*, 557 F.3d at 1122, *ref Johnson v. Johnson*, 385 F.3d at 522, cited with approval in *Jones*, 549 U.S. at 219. An inmate grievance was not required to "lay groundwork for litigation." *Id.* Similarly, Plaintiff's exhaustion efforts were not deficient simply because he did not name various Defendants in his

10

inmate grievances. *Jones*, 549 U.S. at 219 ("Exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.")

Although screened out as duplicative of appeal KVSP-0-10-00468, (*see* Doc. 106-5, p. 8), the content of Plaintiff's December 20, 2009 appeal did not suffice to place prison officials on notice of Plaintiff's claims that Valdivia had made statements which placed Plaintiff in jeopardy, and that although Plaintiff informed a sergeant and other officers of the issue, nothing was done to ensure his safety. The failure to process or submit this appeal by prison staff, as alleged in the First Amended Complaint[5] and reflected in KVSP-0-10-00467, rendered the process unavailable for Plaintiff's December 20, 2009 appeal. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates.")

Liberally construing Plaintiff's filings, *Thomas*, 611 F3d at 1150, and drawing all inferences in the light most favorable to him, *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 942, appeal KVSP-0-10-00468 sufficed to exhaust administrative remedies on Plaintiff's Eighth Amendment claim against Defendant Agu as well has his First Amendment claims against Defendants Valdivia, Agu, Lopez, and Trimble. Additionally, the failure of prison staff to submit Plaintiff's December 2009 appeal rendered the process unavailable, *Ross*, 136 S. Ct. at 859, such that Plaintiff may proceed on his First Amendment retaliation and Eighth Amendment safety claims. Defendants are therefore not entitled to summary judgment for failure to exhaust on Plaintiff's First and Eighth Amendment claims against Defendant Agu and his First Amendment claim against Defendants Trimble, Valdivia, and Lopez.[6]

//

//

---

[5] Plaintiff's First Amended Complaint constitutes an opposing affidavit for purposes of summary judgment since the allegations therein are not based solely on Plaintiff's belief, but on events derived from Plaintiff's personal knowledge, which constitute admissible evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

[6] Plaintiff's "emergency appeal" need not be considered since his December 2009 appeal and KVSP-0-10-00468 are dispositive of the issue.

11

## **RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on September 7, 2017, (Doc. 106), be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**June 21, 2018**__         /s/ *Sheila K. Oberto*
                                     UNITED STATES MAGISTRATE JUDGE